**In re Charles F. STOW, III, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 93–SP–253.

District of Columbia Court of Appeals.

Submitted Oct. 12, 1993.
Decided Nov. 15, 1993.

Before SCHWELB and WAGNER, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

In its Report and Recommendation, which is attached hereto, the Board on Professional Responsibility concluded that respondent Charles F. Stow III, Esq. neglected the legal interests of his client, in violation of DR 6–101(A)(3). The Board has recommended (a) that respondent be required to repay a $750 fee; (b) that he be suspended for thirty days; (c) that the suspension be stayed for one year; and (d) that respondent be placed on probation for one year, during which his

activities would be subject to oversight by a Practice Monitor. The Board based its recommendation on a comprehensive and thoughtful Report by the Hearing Committee. Although respondent litigated the issues vigorously before the Hearing Committee and the Board, he has filed no exceptions to the Board's Report and Recommendation.

We agree, substantially for the reasons stated in the Report and Recommendation, that respondent has violated DR 6–101(A)(3). We specifically hold that the sanction of probation recommended by the Hearing Committee and by the Board is appropriate even though this case involved no allegation of use of or addiction to a controlled substance or to alcohol. *See In re Bradbury,* 608 A.2d 1218, 1219 (D.C.1992). Accordingly,

1. Within thirty days of the date of this opinion,[1] respondent Charles F. Stow, III Esq. shall repay the fee of $750 to his former client, Mr. Elmer Wilbur Toogood;

2. Thirty days after the date of this opinion, respondent Charles F. Stow III, Esq. shall be suspended from practice for a period of thirty days, subject, however, to the provisions set forth below;

3. If, within thirty days of the date of this opinion, respondent Charles F. Stow III, Esq. has filed with the Board on Professional Responsibility a statement certifying that he accepts the conditions of probation set forth in the Board's Report, the suspension shall be stayed for a period of one year, and respondent Charles F. Stow III, Esq. shall be placed on probation for one year, during which period his activities shall be overseen by a Practice Monitor;

4. If the respondent Charles F. Stow III, Esq. has not filed with the Board the statement described in paragraph 3, *supra,* within thirty days of the date of this opinion, the order of suspension shall take effect without further order of the court. The respondent's attention is directed to D.C. Bar Rule XI, § 4(a).

*So ordered.*

1. In the event that a timely petition for rehearing or rehearing en banc is filed, all provisions of this order which specify that action is to be taken within thirty days of the date of this opinion shall be deemed to require such action within thirty days of the final disposition of such motion.

## REPORT AND RECOMMENDATION OF THE BOARD

We have before us the Report of Hearing Committee No. 1, dated May 7, 1990, recommending that Respondent, Charles Stow, be subjected to sanctions for violating the Disciplinary Rules by neglecting a client matter. The Hearing Committee recommended the following sanctions: (a) that Respondent repay a $750 fee; (b) that Respondent be suspended for 30 days; (c) that the suspension be stayed for one year; and (d) that Respondent be placed on probation for one year during which his activities would be subject to oversight by a Practice Monitor. We agree with the Committee's recommendations and pass them on to the Court.

Bar Counsel's Petition in No. 294-89 [2] had charged Respondent with three separate violations of the Disciplinary Rules arising from his undertaking to provide legal services to Elmer Wilbur Toogood. Mr. Toogood had just been convicted in a criminal case handled by a different lawyer. The principal factual issue at the hearing involved the nature of the legal services that Respondent had agreed to furnish for Mr. Toogood.

Bar Counsel alleged that Respondent had been retained to represent Mr. Toogood as to all aspects of the appeal (for a fee of $1,500, of which $750 had been paid). Because Respondent did not handle the appeal, Bar Counsel charged Respondent with: (a) neglecting his client's legal interests in violation of DR 6-101(A)(3); (b) failing to seek the lawful objectives of the client, in violation of DR 7-101(A)(1); and (c) failing to carry out a contract of employment entered into with the client, in violation of DR 7-101(A)(2). Respondent denied that he was to handle the appeal. He said he had been hired only to review the trial record for the limited purpose of determining whether there was a basis for Mr. Toogood's appellate counsel to raise "ineffective assistance of counsel" as an appeal issue.

The Hearing Committee generally credited Respondent's version of the events and determined that Bar Counsel had failed to establish—to the requisite clear and convincing evidence standard—that Respondent had either intentionally failed to seek the lawful objectives of his client, in violation of DR 7-101(A)(1), or intentionally failed to carry out his contract of employment, in violation of DR 7-101(A)(2). The Hearing Committee did conclude, however, that a violation of DR 6-101(A)(3) had been proven. The basis for the finding was that, even in the limited role he said he was hired to play, Respondent failed to provide timely services. Neither Bar Counsel nor Respondent objected to this aspect of the Hearing Committee's Report.

### The Hearing Committee's Recommendation as to Sanctions

The Hearing Committee felt that the circumstances of Respondent's neglect violation, even considering Respondent's record of prior discipline, would ordinarily warrant only public censure of Respondent. However, the Hearing Committee concluded from the record before it that there was such a great risk that Respondent would neglect client matters in the future, that a different sanction was warranted. The Hearing Committee thus recommended that Respondent be required to work with a Practice Monitor for one year. To effectively implement this monitorship, the Committee went on to recommend that Respondent be given a 30-day suspension, with the suspension held in abeyance during a one-year probationary period. The practice monitorship was made a condition of probation. In addition, the Hearing Committee recommended that Respondent be required to refund the $750 fee he had received.

By letter dated May 18, 1992, Bar Counsel noted what it called "a protective exception to the sanction aspect of the Hearing Committee's report ... in the event that the Board is not inclined to adopt the sanction recommendation of the Committee." Respondent objected to the recommendation, stating that the "appropriate sanction should not exceed a censure and should not be increased so as to impose a period of proba-

---

**2.** The Petition also included a series of charges involving another client. That aspect of the case went forward as Bar Docket No. 15-90, and was heard by the same Hearing Committee. No violations were found in that case.

tionary supervision." *See* Respondent's Objections to Recommendation of Sanction, dated June 2, 1992.[3]

### The Style of Respondent's Practice

Respondent was hired in this case to evaluate a trial transcript to determine whether there was a basis to urge "ineffective assistance" on appeal. He was found to have neglected this work. Respondent testified that he had expended between 24 and 30 hours in carrying out this assignment (reviewing the record, traveling, and attending conferences), but he had no supporting records. Respondent testified that he had ultimately concluded that there was no basis for Mr. Toogood to urge "ineffective assistance" as an appeal ground, but he did not communicate that conclusion to the client on a timely basis.[4]

The evidence also showed that, from the time he undertook his work from Mr. Toogood in December, 1988, until August 22, 1989, (by which time the client had already complained to Bar Counsel), Respondent had no communication whatever with the Mr. Toogood. Even after Respondent received a May 8, 1989, client letter expressly complaining about lack of communication, Respondent did not respond for three months. It was only after the appellate brief had been filed in Mr. Toogood's criminal case that Respondent communicated to the client the negative results of his review of the trial record.

The Hearing Committee found that Respondent's style of practice, both as revealed by his handling of the Toogood matter and by other evidence, created a serious risk of future neglect violations. H.Comm.Rep. 39. On pages 45–48 of its Report, the Hearing Committee highlighted several other troublesome aspects of Respondent's practice, the facts as to which are amply supported by substantive evidence in the record, as follows:

(1) Respondent had "primarily a volume-type practice...." He handles approximately two hundred cases a year and accepts between 80 and 90 new cases each year. A very substantial portion of Respondent's practice apparently involves criminal defense work for persons of modest means, a substantial number of whom are incarcerated.

(2) Respondent is just "not organized." His lack of organization is the "[bane] of my existence" and "the [bane] of Ms. Stow's existence." He candidly admitted: "I have never been organized and I never will be."

(3) Respondent's file system (a euphemism) was haphazard, to say the least. Respondent does not even open a file for every client he takes on. It did not appear that Respondent had established a separate file for either client involved in the instant proceedings.

(4) Respondent has an unusual way of handling written telephone messages. He places all current messages in a suit pocket and keeps them there for one month. The prior month's messages are moved from the pocket to a briefcase, while earlier messages for the current year are relegated to a box in the back seat of Respondent's car. The "archives" of his phone message slips—*i.e.*, those older than one year—are apparently stored in Respondent's basement.

(5) Respondent had a "strong distaste" for "writing things down...." He recognized that it would be a better practice to have more written communications with clients, he felt that "it destroys

---

3. In a parenthetical statement in that document, Respondent stated that he "would accept such conditions [of probationary supervision] if found appropriate upon review. With respect to the restitution aspect of the sanction, Respondent said he was "prepared to provide restitution as may be deemed just," but suggested that the amount of restitution recommended by the Hearing Committee was not equitable in the circumstances.

4. Respondent claimed that he had written a "rough draft" letter setting forth his legal advice on the ineffective assistance point, but this draft was never typed or sent. No draft, rough or otherwise, was available at the time of the hearing. Tr. at 278.

the relationship that he has had with clients over the years."

(6) Respondent did not urge that high-volume, solo criminal practice inevitably creates a lack of organization. Indeed, at the hearing, Respondent stressed that, in terms of his own lack of organization, "I am much different than a lot of people." *Tr.* 5/17/91, at 85.

We accept all these Hearing Committee findings as based on adequate record evidence.

### The Sanction Recommended

We must agree with the Hearing Committee that Respondent's style of practice, including his aversion to paperwork, created a high risk that he will be back before the disciplinary system on a future neglect case. This is likely to occur even though the Committee viewed Respondent as an experienced attorney of good professional character, with above-average skills, who renders important assistance to clients with limited resources. The Hearing Committee felt a duty to try to protect Respondent's future clients, while it would allow Respondent to continue to practice, both because of the useful service he performs and the devastating effect that a suspension inevitably would have on any solo law practice. The Committee concluded that a period of probation, coupled with practice monitorship, was a sound means of resolving these competing goals.

But for the evidence of disorganization in Respondent's practice, the Hearing Committee said it would have recommended only public censure as the sanction for the neglect finding in this case. However, because of what the Hearing Committee called "an extraordinary degree of disorganization—indeed, practically complete lack of organization"—it concluded that Respondent should be suspended for 30 days.

A 30–day suspension is not an inappropriate sanction in this case based on the neglect violation found. This is especially so when an opportunity is afforded to avoid the suspension altogether. In this regard, we rely on such cases as *In re Banks,* 577 A.2d 316 (D.C.1990); *In re Dory,* 528 A.2d 1247 (D.C. 1987); and *In re Foster,* 581 A.2d 389 (D.C.

1990). We also note Respondent's prior violation of the disciplinary rules, which led to his being publicly censured. The question then becomes whether, on the particular facts of this case, the suspension should be stayed while Respondent serves the one-year probation recommended by the Hearing Committee.

The Hearing Committee had some question about extending a probation/practice monitorship remedy to this type of case. Heretofore, probation has only been used by the Court in those cases where the attorney's misconduct was caused by a disability, such as substance abuse or bipolar illness. Respondent does not seem to have such a disability here. Because the Hearing Committee felt it might be expanding established law by recommending probation here, it moved with understandable caution.

We agree with the Hearing Committee's recommendation. The disciplinary system must be able to adapt to new sanctions and approaches that are in keeping with current knowledge. Well-known examples are, of course, the Court's recent rulings in *In re McBride,* 602 A.2d 626 (D.C.1992) (*en banc*) and *In re Kersey,* 520 A.2d 321 (D.C.1987).

The Hearing Committee ultimately concluded that extension of the probation remedy to this case was justified by a broad reading of the Court's opinion in *In re O'Day,* III, BDN 53–82, 54–82, and 113–82 (1984). We believe that the use of probation and practice monitors in this case has even more recent judicial encouragement. We refer to comments in the Court's recent opinions in *In re Bradbury,* 608 A.2d 1218 (D.C. 1992) and *In re Arceneaux,* 609 A.2d 280 (D.C.1992). For example, in *Bradbury,* the Court expressly stated that "Nothing in our decisions prohibits the Board from recommending probation in a non-disability case." 608 A.2d at 1219, n. 2.

Moreover, it is not at all clear that the "disabilities" for which probation is appropriate should only be those listed in the *Diagnostic and Statistical Manual (3rd ed. revised),* ("DSM–III–R"), which is the basic diagnostic guide used by health care providers and insurers. We see no reason for the

Court to adopt such limitation, especially in a case where the attorney shows behavior that could approach dysfunctionality.

The sanction recommended here is also consistent with recommendations made by the Task Force on Racial and Ethical Bias in its Final Report on the Attorney Disciplinary System, which was issued in May 1992.[5] In its Recommendation No. 10, the Task Force asked the Court of Appeals and the Board to "reexamine the penalties attached to various violations of the disciplinary code . . . and to allow for appropriate consideration of the practicalities of small firm practice in determining the sanctions appropriate for such violations by small firm practitioners." Recommendation No. 11 went on to ask the Court and the Board to consider "the use of fines, remedial courses and other alternatives to suspension for some disciplinary offenses." Task Force Report, p. 51. This is what we would be doing in the instant case.

The Hearing Committee, in its sensitive and thoughtful report, observed that the disciplinary system and the public "should not be confined to a gradual journey up a path of escalating sanctions through repeated invocations of adversary proceedings—a path which inescapably disrupts many other representations of clients and leaves the clients injured by repeated unethical acts lying on the side of the road." H.Comm.Rep. 54. While this language is somewhat more turgid than we would employ, we agree that this is an appropriate case for use of a probation/practice monitorship combination. The particular circumstances of this case—which include Respondent's apparent acquiescence in the sanction—will keep this recommendation from becoming a precedent for use of practice monitors on a helter-skelter basis where there is not strong justification.

· Subjecting a lawyer's practice to an outside monitor is a most significant event that should not be done lightly. We think it is an appropriate sanction in certain cases. This is such a case.

## Conclusion

For the foregoing reasons, we recommend that the sanction suggested by the Hearing Committee be adopted by the Court, *to wit:*

That Respondent should be required to refund the $750 fee he received in the Toogood matter; that he should be suspended for 30–days; that the suspension should be held in abeyance for one year while Respondent is on probation; that a condition of probation should be that Respondent's practice be supervised by a practice monitor selected by the Board, to ensure that Respondent:

a. secures and uses appropriate office personnel assistance and/or equipment to facilitate written communications with clients and others with whom he deals professionally;

b. establishes an appropriate filing system to facilitate efficient storage and retrieval of written notes, correspondence, phone messages, and other business documents, as they relate to particular client matters; and

c. arranges for such other practices, systems, and methods of work as will reasonably aid Respondent in avoiding neglect of future client matters.

Dated this 21st day of December, 1992.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ <u>Charles R. Donnenfeld</u>
Charles R. Donnenfeld, Chair

All Board Members join in this Report.

---

**5.** The Task Force recommendations have been presented to Chief Judge Rogers but have not yet been acted on. Chief Judge Rogers has solicited the views of the Board and Bar Counsel on the Task Force recommendations, and these views were submitted in November, 1992.