**In re James E. JOYNER, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 95–BG–906.**

District of Columbia Court of Appeals.

Argued Jan. 18, 1996.

Decided Feb. 22, 1996.

James T. Maloney for respondent.

Traci M. Tait, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for petitioner.

---

Before SCHWELB, RUIZ, and REID, Associate Judges.

REID, Associate Judge:

The Board on Professional Responsibility has recommended that Respondent James E. Joyner be suspended for thirty days and complete a continuing legal education course on legal ethics. Two members of the Board dissented from the Board's report. Mr. Joyner was charged with violating DR 6–101 by neglecting a legal matter entrusted to him, and DR 7–101 by intentionally failing to seek the lawful objectives of his client, intentionally failing to carry out a contract of employment with the client, and intentionally prejudicing or damaging his client. Mr. Joyner takes exception to the Board's recommendation, and argues that the thirty day suspension should be stayed and that he should be: (1) placed on probation for one year; (2) required to submit to the supervision of a practice monitor and a financial advisor; and (3) be required to complete a Continuing Legal Education course on professional responsibility.

## FACTUAL SUMMARY

After serving in the Department of Justice and the United States Attorney's office, respondent entered into the private practice of law. He has a history of prior discipline in the form of two informal admonitions in 1984 and 1985 for neglect of client matters, failure to appear at two pre-hearing conferences on a client matter, and failure to return documents provided by a client. On August 18, 1988, he was retained by Ms. Antoinette Sebastian on a contingent fee arrangement. Ms. Sebastian alleged that she was sexually assaulted by a District of Columbia ambulance attendant while being transported to the hospital after an automobile accident on June 2, 1988. Although respondent notified the District of Columbia of her intent to sue, and obtained her medical record from D.C. General Hospital, respondent did virtually no other work on the case, and further failed to communicate with his client despite her efforts to obtain progress reports regarding her case. Respondent missed the one year statutory deadline for filing a complaint against the District of Columbia. He stated that his secretary erroneously classified the client's case as one involving a three year statute of limitations period. Respondent called the client, informed her that he had missed the filing deadline, and advised the client that she might want to retain other counsel to pursue a negligence claim against the District of Columbia. The client retained other counsel as advised, but the negligence claim was unsuccessful. In addition, the client sued respondent for malpractice. Although a $25,000 judgment was entered against him, respondent had no malpractice insurance, and made no effort to satisfy the judgment.

After disciplinary charges had been filed against respondent for violation of DR 6–101 and DR 7–101, the Board concluded that there was clear and convincing evidence of respondent's violation of DR 6–101, and recommended a thirty day suspension and enrollment in a legal ethics course. The Board declined to accept respondent's requested sanction because: (1) there were "no known limits on his ability to correct manageable deficiencies in his practice organization"; and (2) respondent failed "to pay so much as a dollar of the [malpractice] judgment [against him], or to offer any payment plan."

## ANALYSIS

Respondent argues that: (1) "[c]o-operation with a financial monitor is a permissible condition of probation"; and (2) "[t]he probationary plan ... is the most appropriate disciplinary remedy." Our standard of review is governed by D.C.Bar R. XI § (9)(g)(1).[1] Respondent contests only the Board's recommended discipline, not its conclusion that he has violated DR 6–101. Hence, this court must adopt the Board's

---

1. D.C.Bar R. XI § (9)(g)(1) specifies in pertinent part that:

    the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.

recommendation as to discipline " 'unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.' " *In re Steele*, 630 A.2d 196, 199 (D.C.1993) (quoting D.C.Bar R. XI, § 9(g) (other citations omitted)). Our review is limited to determining whether the Board has abused its discretion or whether the exercise of its judgment in imposing punishment is unreasonable. *See In re Hutchinson*, 534 A.2d 919, 924 (D.C. 1987) (en banc), relying on *In re Haupt*, 422 A.2d 768, 771 (D.C.1980).

■ The Board's discussion of the appropriate sanction in this case is cogent. It takes into consideration respondent's prior disciplinary history, existing precedent, and respondent's arguments for monitored probation. Since respondent already had received two prior informal admonitions for neglect of client matters, it was reasonable for the Board to conclude that discipline was warranted. Moreover, the Board carefully examined two lines of cases which imposed discipline (favored by the Board) or monitored probation (advocated by respondent). In *In re Banks*, 577 A.2d 316, 318 (D.C.1990), this court adopted the Board's recommendation of a thirty day suspension where: "The Board noted that respondent had three prior disciplinary violations, including a public censure ... [because] a suspension would impress upon him the severity of his neglect and the importance of reform of his office practices." *See also In re Foster*, 581 A.2d 389 (D.C.1990) (per curiam).

After extensive analysis, the Board declined to follow the monitored probation approach recommended by the Board and affirmed by this court in *In re Stow*, 633 A.2d 782 (D.C.1993). Respondent's case is not the same as *Stow*. First, the Board recommended probation and *Stow* raised no objection. We owed considerable deference to the Board's recommendation. *In re Hutchinson*, 534 A.2d at 924. The fact that we approved the Board's recommendation of probation in *Stow*, does not mean that we are obligated to second-guess the Board and to impose proba-

tion in respondent's case. Second, the factual situation in *Stow* was different. In *Stow*, respondent's thirty day suspension was stayed on condition that he complete one year of probation under a practice monitor. *Stow* handled two hundred cases a year and had "an aversion to paperwork, [which] created a high risk that he [would] be back before the disciplinary system on a future neglect case." 633 A.2d at 785. The Board did not find respondent's situation analogous to that discussed in *Stow*. The Board considered "[s]ome of the deficiencies in [r]espondent's practice ... [to be] easy to fix," but noted that he "has not given the Board comfort that he has done even the simplest of ... tasks." Nor had he taken any step "to explain how he will pay Ms. Sebastian the damages he owes her due to the malpractice judgment."

Furthermore, the Board regarded respondent's case as a "routine neglect case" involving an attorney who "has no known limits on his ability to correct manageable deficiencies in his practice organization." In the Board's view, "[t]here are many resources for practitioners to draw upon" regarding practice management skills, including "[c]ontinuing legal education courses and seminars focusing on office management and ethics issues [that] are available through the D.C.Bar, local law schools and the voluntary bar organizations." We agree.

Finally, the Board considered a financial monitor to be inappropriate because the record revealed no "financial data that such a monitor would do some good." During his hearing, respondent testified that, even though judgment had been rendered against him more than one year ago, he had not paid any money to Ms. Sebastian; that he had not sent any letters to her attorneys indicating that he lacked financial resources; and that he continued to practice law and receive payment for some of his cases.

We are satisfied that the discipline recommended by the Board is reasonable, warranted and is consistent with prior cases involving comparable conduct.[2] Accordingly, we

---

2. Respondent has made no payment whatsoever on the outstanding judgment against him. The Board "strongly [urged] [r]espondent to develop a payment plan that compensates Ms. Sebastian for the harm he caused," and we agree. Needless to say, any attorney against whom a mone-

adopt the Board's recommendation that respondent be suspended from the practice of law for thirty days, and that he be required to certify to the Board the completion of a continuing legal education course on legal ethics. The suspension shall commence thirty days after the date of this opinion; and the certification shall be submitted to Bar Counsel and the Board no more than sixty days after the date of this opinion. We invite respondent's attention to the provisions of D.C.Bar R. XI, § 14(g).

*So ordered.*

tary judgment has been entered should pay that judgment, or make arrangements to do so as promptly as possible. However, Ms. Sebastian instituted a civil proceeding against respondent and obtained judgment against him, which she can enforce against respondent through available procedures. On the facts of this case, resort to those procedures provides a more logical means of securing compensation than does resort to the disciplinary system. Thus, we do not believe that adoption of the Board's recommendation would be unwarranted.