In re Jerry S. DUNIETZ, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 94–BG–780.

District of Columbia Court of Appeals.

Argued Oct. 17, 1995.
Decided Dec. 31, 1996.

Jerry S. Dunietz, pro se.

Ross T. Dicker, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, for the Board on Professional Responsibility.

Before WAGNER, Chief Judge, and FARRELL and RUIZ, Associate Judges.

WAGNER, Chief Judge:

In this disciplinary case, respondent stipulated to the facts supporting charges filed by Bar Counsel that he violated Disciplinary Rule 6–101(A)(3) (neglect of a legal matter), DR 7–101(A)(1) (intentional failure to seek the lawful objectives of a client), Rule 1.3(a) (failure to represent client zealously and diligently), Rule 1.3(c) (failure to act with reasonable promptness in representing a client) and Rule 1.4(a) (failure to keep client reasonably informed of the status of the case).[1] Respondent conceded that his conduct violated these rules and, in lieu of an answer, filed a Motion for Mitigation of Sanction, asserting that his conduct was substantially affected by a disability suffered at the time of the misconduct. Following an evidentiary hearing, Hearing Committee Number Eight (Hearing Committee) of the Board on Professional Responsibility (Board) determined that respondent's disability, chronic depression, was the direct cause of his professional misconduct. The Hearing Committee recommended an informal admonition in light of the mitigating factors and respondent's prior unblemished record at the Bar. The Board, with three members dissenting, recommended that the court enter an order censuring respondent, retaining the case in a confidential status, and staying the imposition of public censure conditioned on respondent's compliance with conditions of probation for a two-year period. Bar Counsel challenges the Board's recommendation, contending that it is inconsistent with the discipline imposed in comparable cases and not warranted otherwise. The principal issues presented for consideration are: (1) whether the recommended sanction is authorized by Rule XI, § 3(a) and consistent with sanctions imposed for comparable misconduct; and (2) whether any order for censure may be retained in confidential status. We hold that retaining the case in confidential status is inconsistent with prior precedents and contrary to the goal of protecting the public's interest. Although the sanction of a censure, along with a probationary period, is authorized by Rule XI, § 3(a),

we conclude that a thirty-day suspension, with a stay conditioned upon satisfactory completion of probation, is warranted under the circumstances.

## I. The Disciplinary Violations

Respondent was admitted to the District of Columbia Bar on June 25, 1982. He had no prior disciplinary record before Bar Counsel filed a petition in this case on February 24, 1993. The charges arise out of respondent's representation of a single client, Carl Miller, in connection with a proceeding in the United States Bankruptcy Court for the District of Columbia (Court). Ali Habib (Habib) filed a complaint contesting Miller's discharge in bankruptcy and served a copy of the complaint and summons on respondent on May 5, 1989 at his address of record. Respondent acknowledged receipt of the summons and complaint, but failed to file an answer. On June 15, 1989, Habib filed a request for entry of default, again mailing a copy to respondent at his business address, and respondent failed to answer. On June 21, 1989, Habib filed a motion for judgment by default, and a copy was mailed to respondent, but respondent filed no opposition.

On July 12, 1989, the Court issued a scheduling order, a copy of which was sent to Habib, but not to respondent. On October 2, 1989, a hearing was held in which the court found in favor of Habib in the amount of $274,000 and ordered Habib to file a brief on the issue of additional compensatory damages and punitive damages. On October 10, 1989, the court entered an order for Habib to file a brief on the question of reduction of the $274,000 award to reflect his sixty percent share in the partnership at issue. A copy of this order was mailed to respondent at his business address. Habib filed three briefs in support of an award for punitive damages and additional compensatory damages, to which respondent never responded. On May 9, 1990, the court entered an order granting Habib's motion for judgment by default and awarded him compensatory damages against

---

1. Respondent was charged with violations of the Code of Professional Responsibility for his misconduct prior to January 1, 1991, the effective date of the District of Columbia Rules of Professional Conduct (Rules). He was charged with violations of the Rules for his misconduct after January 1, 1991.

Miller in the amount of $236,000, plus costs and interest and punitive damages in the amount of $118,200.

On February 28, 1991, respondent filed a motion to vacate the entry of judgment and judgment by default with a supporting affidavit admitting that both he and Miller had received a copy of the complaint and failed to answer. However, respondent also stated in the affidavit that the clerk of the court had failed to send him a copy of the scheduling order and that he did not appear at the proceeding in which the default was entered because of the lack of notice. On March 19, 1991, respondent filed a reply to Habib's opposition to the motion in which he stated that he did not dispute that Habib had mailed several pleadings and notices to him. However, he represented that he had not seen the documents and that he was unable to confirm their receipt or to locate them.

On May 29, 1991, the court entered an order granting respondent's motion to vacate entry of default and judgment by default and ordered Miller to pay Habib's attorney's fees and costs within twenty days of a filing of an affidavit by Habib or the default judgment would be reinstated. Respondent assumed responsibility for paying these fees and costs, but he failed to pay. On June 17, 1991, Habib filed a motion to reinstate the default judgment, which the court later granted as unopposed on July 12, 1991.

On July 17, 1991, Miller was held in contempt for failing to file operating reports requested by the trustee in the bankruptcy proceeding. Respondent had the documents, but he failed to respond to the trustee's request. On August 7, 1991, respondent attempted to file a motion to vacate the order reinstating the judgment by default, but the court clerk rejected it because it did not include a proposed order. On September 6, 1991, respondent again filed a motion to vacate the July 12, 1991 order, asserting that the clerk did not mail a copy to him or to Habib and that neither learned of it until August 1, 1991. Respondent further claimed that the order was improvidently entered

because he and Habib had entered into an agreement for the payment of the counsel fees, but Habib had failed to withdraw his motion to reinstate the default judgment. The court denied respondent's motion to vacate on November 14, 1991.

Successor counsel for Miller filed a motion for relief from the default judgment. In support of the motion, Miller submitted a declaration under penalty of perjury explaining the defaults of respondent in representing him and the fact that he was "faced with a $354,600 non-dischargeable debt that has gone uncontested because my lawyer [Dunietz] did not do the job properly." Miller also indicated that he had been held in contempt, without his knowledge, for failure to file operating reports which were in respondent's possession, that respondent had not informed him of the default judgment until December 1990, and that respondent did not inform him until August 1, 1991, about the reinstatement of the default judgment. The court granted Miller's motion for relief from default judgment. Subsequently, respondent voluntarily reimbursed Miller for attorney's fees and other expenses incurred as a result of his misconduct. Essentially, these stipulated facts and respondent's concession that his conduct violated the disciplinary rules as charged resulted in the determination of the Board and the Hearing Committee that respondent violated the various disciplinary rules charged by Bar Counsel.[2]

## II. *The Mitigation Defense*

At the hearing, respondent presented evidence that he suffered from severe depression at the time of his misconduct, for which he was treated by a psychologist, who provided a written report. The psychologist made a diagnosis of depression and stress and opined that, as a result of respondent's circumstances and condition, he "was unable to function properly in regards to his professional responsibilities." She also reported that respondent had been "diligent about his treatment" and that he had a strong commitment to recovery.

---

2. Bar Counsel did not pursue the alleged violation of DR 7–101(A)(1), intentional failure to seek

the lawful objectives of a client.

Dr. Richard Ratner, a forensic psychiatrist, examined respondent at the request of Bar Counsel. He met with respondent three times, spoke with respondent's psychologist and reviewed her report. Dr. Ratner's opinion was consistent with the opinion of the psychologist. Dr. Ratner concluded that respondent's condition directly caused his misconduct, but that respondent is now free of the major depressive component of his condition and is not likely to repeat his misconduct, because he continues to receive treatment. Dr. Ratner was also of the opinion that respondent was "as well armed or as well protected at this point from a relapse as he could be."

Respondent's law partner, Edward Carnot, testified that he considered respondent to be an "exceedingly responsible attorney" who carried a large case load and supervised others in the firm; however, around August, 1991, respondent began to neglect his work, concentrating on a major illness of one of his family members. According to Carnot, respondent looked "terrible" and "distracted." Carnot also testified that respondent told him about his mental condition in December, 1991, when Carnot discovered a pleading in the Miller case file. Carnot testified that he did not dismiss respondent because he believes that respondent is an excellent attorney who has overcome his disability. He also testified that as a result of respondent's neglect of the Miller case, respondent did not receive substantial bonuses.

### III. *The Recommended Sanctions*

Hearing Committee Number Eight found that Bar Counsel had proved all the charged violations and that there was a causal connection between respondent's misconduct and his disability. In recommending that respondent be sanctioned with an informal admonition, members of the Hearing Committee stated that they did not "feel that [respondent] should be publicly reprimanded ... for conduct caused by a mental condition that he

was trying to bring into control, but could not for reasons beyond his control." The Hearing Committee's report also states that they would have recommended public censure except for the mitigating factors. The Hearing Committee expressed concern that respondent had not submitted a post-hearing brief, although he had indicated that he would. However, having no evidence of any relapse, the committee recommended an informal admonition.

A majority of the Board's members recommended that the court enter an order censuring respondent, but retaining the matter in a confidential status and staying the imposition of public censure, provided that respondent complies with the following conditions of probation for a two-year period: (1) that he be supervised by a practice monitor selected by the Board; and (2) continue counseling with his psychologist or other qualified mental health professional, with quarterly reports of his progress from the professional. In view of respondent's cooperation with the disciplinary system, the lack of a prior disciplinary record, his efforts to make his former client whole, the evidence of his disability and expressed intention to continue with treatment, and his willingness to follow the terms of probation, the majority members of the Board determined that a suspension was not warranted and that the recommended sanction with probationary conditions would assure the protection of the public and serve as a deterrent to future violations.[3]

### IV. *Sanctions*

The Board argues that its recommendation for sanction is consistent with sanctions imposed for comparable misconduct and appropriate to the facts of this case. Specifically, the Board contends that: (1) censure with probation is authorized under Rule XI, § 3(a); (2) censure with probation is consistent with discipline imposed in comparable cases of neglect; and (3) confidential censure accords with the purposes of Bar discipline.

---

3. The Chairman of the Board and two other members recommended a two-month suspension with the execution suspended and a period of probation under the terms and conditions set forth in the majority's report. The dissenting members also recommended that the respon-

dent's identity be revealed. It was their position that members of the Bar and the general public have a right to know and that confidential cases are inconsistent with the anticipated revisions to the disciplinary rules.

Bar Counsel argues that the Board's recommended sanction is neither consistent with comparable discipline nor otherwise warranted.

■■■ In determining the appropriate sanction in a disciplinary proceeding, this court will "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." Rule XI, § 9(g)(1); *In re Peek*, 565 A.2d 627, 632 n. 6 (D.C.1989); *see also In re Steele*, 630 A.2d 196, 199 (D.C. 1993). Under Rule XI, the choice of sanction rests with this court, although considerable deference is accorded the Board's recommendation. *In re Temple*, 629 A.2d 1203, 1207 (D.C.1993) (citing *In re Robertson*, 612 A.2d 1236, 1237 (D.C.1992) and *In re Shillaire*, 549 A.2d 336, 342 (D.C.1988)). As this court stated in *In re Haupt*, 422 A.2d 768 (D.C. 1980):

> [T]he rule endorses the Board's exercise of broad discretion in handing out discipline that is subject only to a general review for abuse in that discretion's exercise. The rule requires that we enforce a general sense of equality in the sanctions handed out, but it otherwise commands that we should respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable.

422 A.2d at 771.

The majority of the Board has devised a sanction which it contends accords with the purposes of Bar discipline and complies with the requirements of Rule XI. The Board takes the position that censure for respondent's first infractions is consistent with sanctions imposed for comparable conduct and that the recommendation takes into account the substantial evidence of mitigation. It is the Board's view that confidential censure, with the specter of disclosure upon violation of the terms of probation, assures respondent's compliance and protects the public. Bar Counsel responds that respondent's misconduct was pervasive and serious, although mitigated by his illness, and thus the private censure does not promote the

concerns of discipline, *i.e.*, "to protect the public, the courts, and the legal profession." *Steele, supra*, 630 A.2d at 200 (citations omitted). In light of the Board's findings that respondent engaged in prolonged neglect of his client's case, failed to represent him diligently and with reasonable promptness, and failed to keep him reasonably informed of the status of his case, Bar Counsel recommends a suspension of sixty days to be stayed upon compliance with the terms of probation for two years.[4]

Rule XI, § 3(a)(3) provides that "[a]ny of the following sanctions may be imposed on an attorney for a disciplinary violation: ... [c]ensure by the Court." Rule XI, § 3(a)(7) states, in pertinent part:

> Any of the following sanctions may be imposed on an attorney for a disciplinary violation.... Probation imposed by the Court, or imposed by the Board with the consent of the attorney and the approval of the Court, for not more than three years. *Probation may be imposed in lieu of or in addition to any other disciplinary sanction.* Any conditions of probation shall be stated in writing in the order imposing probation.... Violation of any condition of probation shall make the attorney subject to revocation of probation and the imposition of any other disciplinary sanction listed in this subsection, but only to the extent stated in the order imposing probation.

(Emphasis added.) Under the plain language of Rule XI, censure is one of the disciplinary sanctions which may be imposed. Moreover, there is no prohibition to the imposition of probation in addition to censure under the rule. *See* Rule XI, § 2(a).

■■■ The Board, however, has gone an important step further and recommended that the censure be made confidential, conditioned upon respondent's compliance with the terms of his probation. We cannot accept that recommendation. A private censure would be contrary to the public interest, and it would be inconsistent with our recent amendment to Rule XI, § 17(a). Formerly, the only form of discipline that was required to

---

4. The chairman of the Board made the same   recommendation.

"be kept confidential" was an informal admonition, which all agree would be an inadequate sanction in this case. Even as to the informal admonition, however, we have since changed the rule on confidentially to read, in relevant part, as follows:

(a) *Disciplinary proceedings.* Except as otherwise provided in this rule or as the Court may otherwise order, all proceedings involving allegations of misconduct by an attorney shall be kept confidential *until either a petition has been filed under section 8(c) or an informal admonition has been issued. All proceedings before the Hearing Committee and the Board shall be open to the public, and the petition, together with any exhibits introduced into evidence, shall be available for public inspection. If an informal admonition is issued, the correspondence from Bar Counsel informing the attorney of the grounds for the admonition shall be available for public inspection.* Bar Counsel's files and records, however, shall not be available for public inspection except to the extent that portions thereof are introduced into evidence in a proceeding before the Hearing Committee.

Emphasis added.

The italicized language reflects a judgment by the court in favor of general openness of disciplinary proceedings, and of public disclosure of the sanction imposed, that is quite inconsistent with the private censure recommended by the Board. Protection of the public and promoting confidence in the disciplinary system counsels against confidential discipline except to the limited extent provided in revised section 17(a). We are thus left with the question whether to adopt a recommendation of censure (albeit public) followed by a period of probation.

■■■ The Board contends that censure with probation is consistent with discipline imposed in comparable cases for similar misconduct. Bar Counsel contends otherwise, pointing out that, in the typical case, probation is coupled with a brief suspension which is made public. In determining whether a sanction is consistent with sanctions imposed for comparable misconduct, this court compares the gravity and frequency of the misconduct, any prior discipline, and mitigating factors such as cooperation with Bar Counsel, remorse, illness or stress. *Steele, supra,* 630 A.2d at 199. (citations omitted). Ultimately, "each case must be decided on its particular facts," "[w]ithin the limits of the mandate to achieve consistency." *Haupt, supra,* 422 A.2d at 771.

■■■ Respondent's misconduct involved neglect of a legal matter, failure to represent a client zealously and diligently, failure to act with reasonable promptness in representing a client, and failure to keep a client reasonably informed of the status of the case. The misconduct arose out of respondent's representation of one client in a bankruptcy case; however the misconduct was prolonged and the consequences to the client serious. Respondent has had no prior discipline. As the Board points out, Bar Counsel's proposed two-month underlying suspension has been imposed only in cases of more aggravated neglect, accompanied by other violations. For example in *Peek, supra,* the only disciplinary case where the court has considered chronic depression as a mitigating factor, the attorney was suspended for four months of which two months were stayed, and Peek was placed on probation for two years. 565 A.2d at 628, 634. However, Peek had neglected his client's civil complaint for seven years, resulting in its dismissal with prejudice. He took no action to reinstate the case within the time permitted by court rules. He repeatedly avoided answering the telephone calls of his client and the attorney who called on her behalf. When the client finally reached Peek, he misrepresented the status of the case, assuring the client that everything was fine. *Id.* at 628–29. Unlike respondent in this case, Peek had had two prior informal admonitions and was not contrite about his misconduct. *Id.* at 630 n. 2.

Similarly, in other cases where a sixty-day suspension has been imposed, either the misconduct has been more serious, or the respondent had other discipline. *See In re Santana,* 583 A.2d 1011 (D.C.1990) (per curiam) (sixty-day suspension given for neglect in two legal matters "considered with failure to return unearned fees, lack of contrition, and harm and aggravation caused to

clients"); *In re Landesberg*, 518 A.2d 96, 97 (D.C.1986) (suspension for sixty-day for neglect of a legal matter and misrepresentations to the client where there was prior discipline).

In contrast, respondent in this case did not irretrievably prejudice his client. He was remorseful for his misconduct, had no prior disciplinary infractions, acknowledged his misconduct, and compensated his client and his former firm for losses suffered as a result of the neglect. The imposition of a two-month suspension, which has been imposed in more aggravated cases, coupled with two years probation would not only violate the rule's consistency requirement, but it would render the sanction punitive. *See Steele, supra*, 630 A.2d at 200 (purpose of imposing sanction is not to punish, but to protect the public and restore the attorney to fitness).

■ Nevertheless, respondent's conduct, as the Board noted, was replete with missed deadlines and failures to respond to court pleadings as a result of which his client was held in contempt of court and subjected to default judgments twice, resulting in the award of monetary damages against him. On the other hand, the mitigation evidence was substantial. He conceded the misconduct at the outset and expressed remorse for it. Respondent also proved that his misconduct was the result of his disability. In considering the specific discipline, we take into account "the nature of the violation, the mitigating and aggravating circumstances, the need to protect the public, the courts, and the legal profession." *Haupt, supra*, 422 A.2d at 771. While seeking to achieve consistency of sanction, each case must be decided upon its unique facts. *Id.*

In light of these considerations, we are persuaded that a thirty-day suspension to be stayed with a two-year probationary term is appropriate to achieve the goals of the disciplinary system. In *In re Dory*, 528 A.2d 1247 (D.C.1987), this court suspended Dory for thirty days for neglect of a legal matter in a single case, recognizing that Dory had no prior disciplinary history and that the misconduct resulted from work-related stress. 528 A.2d at 1248. Similarly, we suspended Dory for thirty days in a second case for neglect of a legal matter which occurred within a few weeks of the earlier violation and had been caused by the same stresses. *In re Dory*, 552 A.2d 518, 519 (D.C.1989). We found a thirty-day suspension with a one year probationary period to be an appropriate sanction for the attorney's neglect of a legal matter in *In re Stow*, 633 A.2d 782, 785 (D.C.1993). Although, unlike respondent in this case, the respondent in *Stow* had a record of prior discipline, the infractions in *Stow* were not as extensive and serious as those in this case.[5] Thus, balancing the variables, the imposition of a thirty-day suspension in respondent's case creates no meaningful inconsistency.[6]

Perhaps, more pertinent to our consideration here is that in *Stow*, we recognized the need for approaches to sanctions which are tailored to assure the protection of the public by addressing specifically the circumstances which brought about the misconduct through probationary conditions. *See id.* In *Stow*, we stayed the suspension conditioned upon compliance with the terms of probation which included a practice monitor to supervise respondent's organization of his practice, the general source of his difficulties. In respondent's case, his disability, which is being addressed through treatment, was shown to be the reason for his misconduct. While on probation, respondent will be required to continue treatment and work with a practice

---

5. In *Stow*, the attorney was hired to undertake the limited role of reviewing the trial record to determine whether his client had a basis for a claim of ineffective assistance of counsel, and he failed to provide timely services. 633 A.2d at 783.

6. This court has imposed public censure for neglect of a legal matter, conduct prejudicial to the administration of justice, and failure to maintain complete client records and account to the client. *See In re Jones*, 521 A.2d 1119 (D.C.1986). Jones failed to file timely with the court accounts required by court rule, and she was removed from the case as a result. She also admitted to failing to respond to Bar Counsel's written inquiries. *Id.* at 1121. Respondent's conduct in this case was much more serious and caused significant difficulties for his client. Therefore, respondent's conduct, even though mitigated by his illness, is not sufficiently similar to warrant only censure, even with probation.

monitor, which he is willing to do. Such conditions will assure the protection of the public and respondent's continuing fitness to practice.

Accordingly, it is ordered that respondent, Jerry S. Dunietz, be suspended from the practice of law for a period of thirty days. The suspension shall be stayed, and respondent shall be placed on probation for a term of two years with the following conditions: (1) supervision of respondent's professional conduct by a practice monitor selected by the Board; and (2) continued counseling by his psychologist or other qualified mental health professional, with quarterly reports of respondent's progress.

It is further ORDERED that this case be recaptioned in respondent's name, Jerry S. Dunietz.

*So ordered.*