In re Phyllis J. OUTLAW, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 317537).

No. 05–BG–1470.

District of Columbia Court of Appeals.

Argued Feb. 5, 2007.

Decided March 1, 2007.

 

Pamela A. Bresnahan, with whom Elizabeth Treubert Simon, was on the brief for respondent.

H. Clay Smith III, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, was on the brief for the Board on Professional Responsibility.

Before GLICKMAN and FISHER, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM:

On the basis of multiple violations of the Rules of Professional Conduct, the Board on Professional Responsibility recommends that respondent Phyllis J. Outlaw be suspended from the practice of law for sixty days. Respondent takes exception to the Board's findings. She contends the evidence presented by Bar Counsel is not clear and convincing as to any of the violations, and further argues that the recommended sanction is inappropriate. Although the Hearing Committee recommended a sanction of thirty days' suspension, Bar Counsel argues that respondent should be suspended for six months. We accept the Board's findings and adopt the recommendation for sixty days' suspension.

## I.

Respondent, licensed to practice law in the District of Columbia and Maryland, pursued her work primarily as a sole practitioner. In September 1993, respondent was retained by Ms. Mae E. Scott to represent her in a civil matter stemming from injuries sustained in a fall which occurred on August 2, 1993 in Virginia. Respondent's office was located in the District, and after she was retained, the client's case information was entered in the firm's computer system by a case manager. The pertinent two-year statute of limitations in Virginia for the client's tort action was incorrectly entered in the system as a three-year statute of limitations. Between October 1993 through April 1994, respondent communicated intermittently with Brothers Development Company, the purported tortfeasor, and Vik Brothers Insurance Group ("Vik Brothers"), its liability insurer. On October 19, 1993, Vik Brothers requested information about Ms. Scott's fall for purposes of evaluating her claim. On December 9, 1993, Vik Brothers again requested the information from respondent's law office. In April 1994, the firm provided information to Vik Brothers, and Vik Brothers continued to wait for a settlement demand from respondent. Respondent did not communicate further with Vik Brothers until April 1996. By that time, Ms. Scott's claim was time-barred by virtue of the Virginia statute of limitations—as of August 2, 1995—without the filing of a legal action.

In April 1996, a new case manager at respondent's office forwarded medical bills to Vik Brothers. Vik Brothers promptly wrote back, informing respondent that the claim was time-barred. Respondent did not share this information with Ms. Scott, but instead informed her on June 12, 1996 that "[d]espite our best effort, this matter has not yet settled and the insurance carri-

er for Brothers Development has refused to accept liability on behalf of their client for your personal injuries. Consequently, at this point it is time for you to decide whether you wish to file suit against the Brothers Development Corp." Respondent estimated that litigation expenses would be approximately $13,000 and notified Ms. Scott that she would be required to pay that amount by the trial date. At no point in her discussions with Ms. Scott did respondent explain that the statute of limitations barred legal action and that it would be necessary, in some manner, to revive the claim. Respondent did, however, inform Ms. Scott that if she decided to pursue a lawsuit, respondent would need to retain co-counsel in Virginia. Ms. Scott nonetheless asked respondent to continue to seek a settlement of her claims. After these discussions in June 1996, respondent did not correspond with Ms. Scott again until terminating her representation in July 1998.

Between February 1997 and May 1998, respondent made intermittent efforts to convince Vik Brothers (and its successor insurance company) to consider settlement of Ms. Scott's claim; however, she was ultimately unsuccessful. In July 1998, respondent informed Ms. Scott that she was unable to settle the claim due to the insurance company's "refusal to negotiate in good faith" and advised her that her file was being closed because the firm was "losing money" on Ms. Scott's matter. Notwithstanding this circumstance, she did not advise the client that the statute of limitations had run. Ms. Scott later requested copies of correspondence respondent directed to the insurance companies on her behalf, as well as other documents from her case file. On August 7, 1998, respondent replied to Ms. Scott's request, and for the first time, informed her that her cause of action had expired, but did not accept any responsibility for that circumstance.

## II.

The Office of Bar Counsel filed multiple claims of violation of the Rules of Professional Conduct before the Hearing Committee. It asserted violations of Rules 1.1(a) (competent representation) and (b) (serve client with skill and care), 1.3(a) (zealous and diligent representation), 1.4(a) (keep client reasonably informed) and (b) (explain matters to clients), 5.5 (unauthorized practice of law), and 8.4(c) (misconduct involving dishonesty, fraud, deceit, or misrepresentation). The Hearing Committee conducted hearings on February 17 and March 10, 2004 and heard extensive testimony and examined a number of documents. The Committee issued its Report and Recommendation on June 21, 2004, finding by clear and convincing evidence that respondent had violated Rules of Professional Conduct 1.1(a) and (b), 1.3(a), 1.4(a) and (b), and 8.4(c), but that Bar Counsel had not demonstrated a violation of Rule 5.5(a). The Committee found Ms. Scott "extremely credible," and found that Bar Counsel's expert witness was "very knowledgeable" about personal injury practice in the District and Virginia, noting that he had also closely reviewed the files and medical records relating to Ms. Scott's case. It determined that respondent's expert was also knowledgeable about personal injury litigation in the District, but noted that he had not reviewed the medical records or incident reports in this case. In commenting on the respondent's credibility, the Committee set forth detailed reasons as to why it did not credit her testimony, specifically listing several contradictions between the standard practices at respondent's firm and the documentary

evidence in this case.[1] In reaching its conclusion that respondent had violated Rules 1.1(a) and (b), the Committee determined that it was ultimately respondent's responsibility to ensure that the statute of limitations was correctly calculated, and that by failing to take timely action, she did not serve her client with the necessary skill and care in this matter. The Committee also determined that, based on the same set of core facts, respondent had violated rule 1.3(a) by failing to zealously and diligently represent Ms. Scott. It pointed to respondent's failure to follow up with the insurance company on the initial claim, the large lags of time between communications, and the fact that respondent did not realize that the statute of limitations had expired until receiving notification from the insurance company. In finding violations of Rules 1.4(a) and (b), the Committee reiterated that respondent became aware of the statute of limitations problem on April 26, 1996, yet did not share that information with her client until July 1998. The Committee found that respondent failed to keep Ms. Scott reasonably informed about the status of her matter and failed to explain the matter to the extent reasonably necessary to permit the client to make an informed decision regarding the representation. This failure to communicate with Ms. Scott also formed the basis for the violation of Rule 8.4(c). As the Committee stated, "[r]espondent may not have actively lied to her client, but she did actively avoid telling the truth."

The Committee took into account the respondent's prior lack of discipline, the seriousness of the misconduct, prejudice to the client, the number of disciplinary rules violated, conduct involving dishonesty, and all mitigating circumstances, in reaching its recommendation that respondent be suspended from the practice of law for thirty (30) days.

On December 23, 2005, the Board issued its Report and Recommendation, in which it determined that there was substantial evidence in the record to establish that respondent violated Rules 1.1(a) and (b), 1.3(a), 1.4(a) and (b), and 8.4(c) and concluded that respondent should be sanctioned by a suspension from the practice of law for sixty (60) days.

### III.

■ In considering the Report and Recommendation of the Board on Professional Responsibility, we reiterate that D.C. Bar Rule XI § 9(g) "requires this court to accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." *In re Mitchell,* 727 A.2d 308, 313 (D.C.1999) (citing *In re Ryan,* 670 A.2d 375, 379 (D.C. 1996)). Respondent's brief to this court contains a variety of exceptions to the Board's Findings and Conclusions and contends that the evidence provided by Bar Counsel failed to prove any of the violations by clear and convincing evidence. We decline respondent's invitation, in effect, to examine de novo every alleged discrepancy regarding the factual determinations made by the Hearing Committee

---

1. For example, respondent's standard form letter to clients contemplating litigation contained a provision discussing the statute of limitations; respondent testified that her June 1996 litigation letter to Ms. Scott was based on her standard form letter. However, the letter sent to Ms. Scott did not discuss the statute of limitations, and the Committee

found it incredible that she would alter her form letter to omit any such reference if she had discussed the issue with Ms. Scott as she claimed. The Committee also noted that respondent's claim that Ms. Scott received copies of all correspondence between herself and Vik Brothers was contradicted by the firm's log of photocopying and postage expenses.

and the Board. "Substantial evidence means enough evidence for a reasonable mind to find sufficient support for the conclusion reached," *In re Thompson*, 583 A.2d 1006, 1008 (D.C.1990), and we conclude that those factual determinations are amply supported by the evidence.

A major instance of misconduct in this matter involves the error in miscalculating the statute of limitations and the neglect of Ms. Scott's case that allowed its expiration before meaningful negotiations could occur. The key factual determinations surrounding this misconduct were that the statute was overlooked, and regardless of the reasons or the identity of the person who entered it into the computer, respondent had the ultimate responsibility for supervising her subordinates and ensuring that the case was correctly calendared. *See In re Cohen*, 847 A.2d 1162, 1166 (D.C.2004) (describing attorney's responsibility to supervise subordinates and reasonably monitor course of representation). *See also In re Joyner*, 670 A.2d 1367 (D.C.1996) (finding that attorney neglected client's case even though secretary had erroneously calculated statute of limitations); *In re Banks*, 577 A.2d 316 (D.C.1990) (holding attorney responsible for neglect of client's case even where file was lost by a law clerk). Respondent acknowledges as much; nor does she significantly dispute the fact that Ms. Scott's case lay dormant for almost two years. Rather, respondent argues that Ms. Scott's continued medical treatment caused the delay in pursuing a settlement; however, that is one factor of many that the Committee and Board considered. The statements of the expert witness indicate that protection against expiration of a statute of limitations is paramount to waiting for full development of damages. Respondent's after-the-fact pursuit of an equitable estoppel argument does not refute the fact that her client's case was damaged by her delay. *See In re Bernstein*, 707 A.2d 371, 376 (D.C.1998); *In re Lewis*, 689 A.2d 561, 564 (D.C.1997). We find ample evidence in the record to support the Board's finding that respondent violated Rules 1.1(a) and (b) and Rule 1.3(a).

A second incident of misconduct is significant. "Honesty is basic to the practice of the law.... Clients must be able to rely unquestioningly on the truthfulness of their counsel." *In re Reback*, 513 A.2d 226, 231 (D.C.1986) (en banc) (internal citation omitted). Although respondent continues to maintain that she informed Ms. Scott about the statute of limitations problem prior to June 1996—after the insurance company brought it to her attention—it is not our role to substitute our credibility determinations for those of the Hearing Committee, as approved by the Board. *See In re Bailey*, 883 A.2d 106, 115 (D.C.2005). The Hearing Committee provided a thoughtful, extensive list of reasons for its decision not to credit the testimony of respondent, and it cross-referenced respondent's assertions with the documentary evidence in the record. In light of these credibility determinations, our review of the record indicates that there is substantial evidence to support the Board's findings that respondent did not promptly inform her client that the statute of limitations barred her claim, and that she deliberately avoided disclosing the true posture of the case. "Concealment or suppression of a material fact is as fraudulent as a positive direct misrepresentation." *In re Mitchell*, 727 A.2d 308, 315 (D.C.1999) (quoting *Andolsun v. Berlitz Sch. of Languages of Am., Inc.*, 196 A.2d 926, 927 (D.C.App.1964)). This type of misconduct is undoubtedly sufficient to establish that respondent violated Rules 1.4(a) and (b), as well as Rule 8.4(c).

## IV.

We turn now to the question of sanctions. The Board has recommended a suspension of sixty (60) days, and we must "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g)(1). Respondent argues that the Board did not appropriately take into consideration her long and unblemished record of service as a member of the District of Columbia Bar. It is true that respondent has been a practicing attorney in the District for twenty-six years and has never before been the subject of disciplinary action. It is also clear that she is generally well-regarded as a competent and experienced attorney. Nonetheless, her conduct in this case evinces a serious lapse in judgment involving both neglect and dishonesty.

In reviewing sanctions for similar misconduct, we note that in *Joyner* and *Banks, supra,* the attorneys received thirty-day suspensions based on neglect in missing the statute of limitations, without any finding of dishonesty. In *In re Ontell,* 593 A.2d 1038 (D.C.1991), the attorney also received a thirty day suspension for neglect in two client matters, which was imposed after the Board found that his misconduct was mitigated by his candor to the Board and to his clients, whereby he admitted that he had made errors as a result of being ill, stressed, and overworked, and he voluntarily compensated one of his clients financially for damages resulting from his error in missing the statute of limitations. *Id.* at 1042. Cases addressing dishonesty have typically indicated that such conduct is viewed as more severe than cases of inadvertent neglect. In *Reback, supra,* although the client was not prejudiced by the attorneys' actions, the substantial dishonesty and fraud perpetrated by the attorneys warranted a suspension of six months. Similarly, in *In re Chisholm,* 679 A.2d 495, 505 (D.C.1996), the attorney's extensive neglect of the case, coupled with his deceit and avoidance of his client resulted in the client spending additional time in jail; thus we found that a suspension of six months was indicated.

In this instance, Bar Counsel urges that the sanction should be greater than the sixty days recommended by the Board because, in addition to the neglect of the client's cause, respondent's misleading conduct was protracted and occurred over an extended period of time. Given respondent's position of trust, counsel suggests that her interaction with her client was repeatedly evasive, significantly lacking in candor, and intended to avoid professional responsibility. Accordingly, it urges a greater sanction. This argument carries some persuasion. Because we conclude that the Board's recommended sanction of sixty (60) days is not inconsistent with comparable conduct under our case law, we are constrained to accept it. Accordingly, we adopt the Board's recommendations and direct respondent's attention to the requirements of D.C. Bar R. XI, § 14(g).

*So ordered.*