### In re Herbert COHEN, Respondent.

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 02–BG–863.

District of Columbia Court of Appeals.

Argued Feb. 11, 2004.
Decided April 29, 2004.

Jacob A. Stein, with whom George A. Fisher, Washington, was on the brief for respondent.

Julia L. Porter, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, filed a statement in lieu of brief for the Board on Professional Responsibility.

Before FARRELL and WASHINGTON, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

This case presents new questions relating to the supervisory responsibility of senior lawyers for the performance of other subordinate lawyers working under their direction in a law firm, law department, government agency, or other legal group. This matter arose when respondent's law firm sought to register a trademark for a client. In the course of events, the two individuals interested in obtaining the registration had disagreements; the firm—which ended up representing both—took actions favoring one without notifying the other or safeguarding his interests. Ultimately, Bar Counsel alleged multiple violations of the D.C. Rules of Professional Conduct ("Rules") by respondent, Herbert Cohen. It was alleged that respondent violated Rule 1.3(b) (intentionally prejudicing or damaging a client); Rule 1.4(a) (failure to keep the client informed or to respond to reasonable requests for information); Rule 1.7(b) (conflict of interest between existing or former clients); Rule 1.16(d) (failure to protect client's interest and surrender papers upon withdrawal); Rule 3.3(a) (knowingly make a false statement to a tribunal); Rule 5.1(a) (failure to make reasonable efforts to ensure firm takes effective measures to assure conformance with Rules); Rule 5.1(c)(2) (responsibility for violation by another); and Rule 8.4(c) (engaging in dishonest conduct or misrepresentation).

The Hearing Committee found violations of all the specifications except Rules 1.3(b), 3.3(a), and 8.4(c). The Committee further found that respondent had violated Rule 5.1(c)(2) by his failure reasonably to become aware of and prevent a violation of Rule 8.4(c) by an attorney under his supervision, Jonathan Cohen. The Board on Professional Responsibility ("Board") adopted the Committee's findings and conclusions in the main. In addition, however, the Board concluded that respondent had violated Rule 5.1(c)(2) by his failure reasonably to become aware of and prevent a violation of Rule 3.3(a) by Jonathan Cohen. The Board, with concurrence of Bar Counsel, recommends that respondent be suspended from the practice of law in the District of Columbia for a period of thirty days. We adopt this recommendation.

## I.

In 1992, respondent was a name partner in a law firm consisting of approximately twelve attorneys. During the year the firm undertook representation of Dr. Carl Schleicher and his company, Mankind Research Foundation ("MRF"), a non-profit company, in a trademark proceeding before the United States Patent and Trademark Office ("PTO"). The firm sought to register the trademark "ESSIAC," on be-

half of Dr. Schleicher and his company. Although Herbert Cohen, a partner in the law firm, conferred on occasion with the client, Jonathan Cohen, an associate in the law firm (and respondent's son), performed much of the day-to-day work related to the representation of the client. Dr. Schleicher made the initial contact with the law firm, and was, at the outset, the individual with whom the firm communicated. Prior to engaging the services of the firm, MRF entered into a business arrangement with David Dobbie, whereby Mr. Dobbie would serve as the exclusive distributor of products under the "ESSIAC" trademark.

Pursuant to the client's request, the firm initiated a trademark application for MRF for the trademark "ESSIAC" before the PTO. The trademark registration process did not go as smoothly as the parties had anticipated, as the trademark "ESSIAC" was already registered to a different entity. The firm advised MRF that in order to secure the trademark for its own use, a cancellation proceeding before the PTO would be necessary. In such a proceeding, the prior registration would be cancelled. The expectation was that after a successful resolution of the cancellation proceeding, the PTO would then act on MRF's trademark application.

During the pendency of the matters before the PTO, the relationship between Dr. Schleicher and Mr. Dobbie deteriorated. During this time, Mr. Dobbie took a more active role in dealing with the firm. At one point, in spite of their worsening relationship, Dr. Schleicher authorized the firm to deal with Mr. Dobbie instead of him. Subsequently, the hostility between Mr. Dobbie and Dr. Schleicher escalated, and Dr. Schleicher revoked his prior authorization that the firm deal with Mr. Dobbie, and instructed that the firm once again communicate only with him. At this point, respondent was aware that the relationship between Mr. Dobbie and Dr. Schleicher was acrimonious. Nevertheless, at the request of Mr. Dobbie, now effectively a client of the firm, Jonathan Cohen filed an application to withdraw MRF's initial trademark application before the PTO. During this time, the firm continued to pursue the cancellation proceeding. The withdrawal application was critical because it meant that, if and when the PTO cancelled the prior registration, the trademark "ESSIAC" would be available and Mr. Dobbie would be able to register it for his own benefit, free of any connection with MRF.

After the trademark application withdrawal had been submitted to the PTO, Dr. Schleicher made repeated inquiries requesting information about the general status of the matter. He was not told that the initial application for a trademark on behalf of MRF had been withdrawn. While informed that the cancellation proceeding was ongoing, his repeated requests for information and related documentation were largely ignored. Dr. Schleicher continued to inquire, and at one point was informed by the firm that they no longer considered him (and MRF) their client. During the course of a series of letters exchanged between Dr. Schleicher and respondent, Dr. Schleicher insisted that he was being mistreated by the firm, and continued to demand information and documents.

As it became more apparent that Dr. Schleicher was displeased with the legal representation, respondent took a more active role in the matter. To this end, he sought a legal opinion to determine whether Dr. Schleicher remained the firm's client. This inquiry confirmed that Dr. Schleicher was still the firm's client. Thereafter, the firm took steps to resolve the problems which had arisen. Dr. Schleicher, however, filed a complaint with Bar Counsel alleging that Herbert Cohen

had committed violations of the Rules of Professional Conduct.

## II.

### A.

A Hearing Committee conducted an extensive hearing and examined a number of witnesses and documents. The Committee made numerous findings of facts and concluded that Mr. Cohen had violated several Rules of Professional Conduct. The Hearing Committee found that respondent did not comply with repeated requests for information made by Dr. Schleicher relating to the status of his case, in violation of Rule 1.4(a). It also found that the firm undertook representation of one client, Mr. Dobbie, that was directly adverse to its representations of another client, Dr. Schleicher (and MRF), without obtaining informed consent from Dr. Schleicher, in violation of Rule 1.7(b). The Committee found that when the law firm and Dr. Schleicher finally terminated their relationship, respondent failed to surrender certain papers that Dr. Schleicher requested, and also failed to give him proper notice regarding issues then pending in the matter. Accordingly, the Committee found respondent in violation of Rule 1.16(d). The Hearing Committee also found that, in violation of Rule 5.1(a), the firm did not have measures in place to assure that all lawyers in the firm would adhere to the Rules of Professional Conduct. Respondent, in general, does not contest these findings and conclusions. His primary challenge is to the Board's conclusion that he failed to exercise proper supervisory responsibility over actions by Jonathan Cohen, based on a finding that he reasonably should have been aware of

the subordinate's actions violating Rules 3.3(a) and 8.4.

### B.

We turn then to respondent's challenge to the Board's Report and Recommendations with regard to Rule 5.1(a) and (c)(2), 8.4(c), and 3.3.(a).[1] Rule 5.1(a) provides:

A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurances that all lawyers in the firm conform to the Rules of Professional Conduct.

And Rule 5.1(c)(2) provides in pertinent part:

(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

. . . .

(2) The lawyer has direct supervisory authority over the other lawyer or is a partner in the firm in which the other lawyer practices, and knows or reasonably should know of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

The critical acts underpinning this group of violations were committed by Jonathan Cohen. Jonathan Cohen was an associate at the law firm, and was the lawyer at the firm who performed much of the work on the ESSIAC trademark matter. The acts which gave rise to this set of violations were the filing of a trademark application withdrawal and the effective abandonment of MRF's trademark application. The facts adduced by the Hearing Committee and adopted by the Board show that Jona-

---

1. The Board and the Hearing Committee agree that, under the plain language of Rule 1.3(b)(2), there is no violation of the rule unless there is actual prejudice or damage to the client. There was an express finding that there was no prejudice or damage proven on this instance. We accept the recommendation.

than Cohen filed a trademark application withdrawal before the PTO, which stated, *inter alia,* that "MRF expressly abandoned its above-referenced trademark application." This statement was materially false because it did not accurately represent MRF's position. The facts showed that respondent was not aware of this filing, and did not endorse it at the time. The effect of this filing was that MRF's trademark application was abandoned.

Respondent conceded before the Hearing Committee and the Board that there was no system in place to impart rudimentary ethics training to lawyers in the firm, particularly the less experienced ones. Equally troubling was the lack of a review mechanism which allowed an associate's work to be reviewed and guided by a supervisory attorney. He nevertheless challenges the Board's conclusion of liability under Rule 5.1 based on its finding that he reasonably should have known of and intervened to prevent the dishonest conduct of Jonathan Cohen.

We are mindful that the interpretation of Rule 5.1 as applied to Rules 3.3(a) and 8.4(c) has important consequences for attorneys exercising supervisory responsibility over other lawyers in the District of Columbia. Respondent argues that it is unfair to subject him to discipline for the dishonesty or misrepresentations of another attorney of which he had no knowledge, pointing out that the ABA's Model Rules of Professional Conduct limit such discipline to attorneys who have actual knowledge of the offending conduct of the supervised attorney. But, as the Board recognized, in going beyond the model rule, Rule 5.1(c)(2) reflects what this jurisdiction has determined to be a fair and necessary balance. On the one hand, it is

not a rule of imputed liability for the underlying conduct, and the Board expressly determined that respondent himself had not violated either Rule 3.3(a) or Rule 8.4(c); no inference from the record could be drawn, in other words, that respondent himself had been dishonest or made false statements. On the other hand, Rule 5.1(c)(2) in this jurisdiction represents a judgment that attorneys supervising other lawyers must take reasonable steps to become knowledgeable about the actions of those attorneys in representing clients of the firm. As the Board explained, the "reasonably know" provision was carefully crafted to encourage—indeed to require—supervising attorneys to reasonably monitor the course of a representation such as respondent's firm had undertaken on behalf of Dr. Schleicher, denying them the ostrich-like excuse of saying, in effect, "I didn't know and didn't want to know." [2]

The Committee found that since respondent did not have actual knowledge of the false pleading filed with the PTO (Rule 3.3(a)), or of the misrepresentation related to it (Rule 8.4(c)), that he committed no violation of these rules. The Committee, however, found that respondent reasonably should have been aware of Jonathan Cohen's acts. The Board, addressing these questions on virtually the same record as the Committee, concluded that although respondent did not personally violate 3.3(a) or 8.4(c), he was responsible for the behavior under the plain language of 5.1(c)(2). In reaching this conclusion, the Board took into account a number of factors including the discreet nature of the case, the extended length of the representation, the small size of the firm, and of course, the degree

**2.** Respondent also urges that the court consider the content of the letters exchanged between himself and Dr. Schleicher as evidence he was not aware of the cancellation proceeding. This argument lacks merit because it applies the wrong standard, *e.g.,* "actually knew" as opposed to "should have known."

of supervision or lack thereof. The Board stated:

> Therefore, in the particular circumstances of this case, we conclude that Bar Counsel has established a violation of Rule 5.1(c)(2) because respondent reasonably should have known of the withdrawal application and should have been able to take reasonable remedial action to avoid its consequences. We believe a lawyer of reasonable prudence and competence would have made the inquiry necessary to determine the status of the application proceeding.

We adopt this conclusion given the circumstances of this case.

### III.

■ The Board and the Hearing Committee, keenly aware of the requirement to determine recommended discipline that is consistent with comparable conduct in other cases, D.C.Bar R. XI, § 9(g)(1), have addressed the question of sanctions extensively. The Board, taking into account its conclusions of supervisory responsibility, as well as respondent's personal responsibility for other violations, considered a variety of relevant factors with regard to sanctions. The factors include the seriousness of the misconduct, the number of disciplinary rules violated, prejudice to the client, whether the behavior involved dishonesty, prior discipline, respondent's attitude in retrospect, and circumstances in aggravation or mitigation. *See In re McLain,* 671 A.2d 951, 954 (D.C.1996); *In re Jackson,* 650 A.2d 675, 678 (D.C.1994).[3]

Respondent concedes that he did not consult appropriately with Dr. Schleicher, his client, nor return documents in a timely fashion to which the client was entitled; nor did he utilize any system of oversight which would reasonably assist and guide associates or younger lawyers with regard to the Rules of Professional Conduct. Over an extended period of time—seven months—respondent personally took no affirmative steps to resolve the clear conflict of interest regarding registration of the trademark. In this context, the unauthorized withdrawal of the initial trademark application led directly to the determination of respondent's breach of Rule 5.1 for failure to supervise Jonathan Cohen.

Respondent has practiced law for more than thirty years without professional discipline. It is evident that he cooperated with the investigation in this matter, and was a candid witness. Respondent stated that he should have handled this matter differently.

Although the Board reviewed prior sanctions for the violations involved in earlier cases, it could not draw identical comparisons from those separate instances to the present case, which is a composite of violations ranging from serious to more serious violations. We do not reiterate the Board's careful and extensive comparisons of this case with precedent for relevant individual violations, and for some similar multiple violations. We are satisfied that the recommendation that respondent be suspended from the practice of law for thirty days is a balanced and fair application of disciplinary factors to a case with somewhat uncommon circumstances. Bar

---

**3.** Respondent, relying upon Rule 8.5(b) (choice of law) for the first time, argues that since this matter arose in proceedings before the Patent and Trademark Office (PTO), and since a sanction was imposed by that body, that the Board was obliged to adopt the same result. He points out in particular that the PTO's rules contain no provision regarding the liability of supervising attorneys similar to our Rule 5.1(c)(2). There is a serious question whether Rule 8.5(b) has any application to this case. However, we do not decide the question because respondent did not present the issue to the Board and therefore did not preserve it for appeal. *See In re James,* 452 A.2d 163, 170 (D.C.1982).

Counsel concurs. Accordingly, we adopt the recommendations as to respondent's responsibility and sanction. We direct respondent's attention to the requirements of D.C. Bar R. XI, § 14(g), and their effect on his eligibility for reinstatement. *See* D.C. Bar R. XI, § 16(c).

*So ordered.*