*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-BG-766

IN RE ANTHONY M. RACHAL III, RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 229047)

On Report and Recommendation
of the Board on Professional Responsibility
(BDN-62-14)
(DDN-180-12)

(Argued May 30, 2018                          Decided June 10, 2021)

*Anthony M. Rachal III*, pro se.

*Joseph N. Bowman*, Assistant Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, and *Julia L. Porter* and *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, were on the brief, for the Office of Disciplinary Counsel.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and RUIZ and FISHER*, *Senior Judges*.

PER CURIAM: The Board on Professional Responsibility found that

respondent Anthony M. Rachal III violated District of Columbia Rules of

---

* Judge Fisher was an Associate Judge of the court at the time of oral argument. His status changed to Senior Judge on August 23, 2020.

Professional Conduct 1.3(b)(2) and 1.7(b)(1), (2), and (3) and recommended that he be suspended from the practice of law for three months and required to complete six hours of continuing legal education courses approved by Disciplinary Counsel, including a course on the representation of multiple clients in civil cases. We accept the Board's determination that respondent violated Rules 1.3(b)(2) and 1.7(b)(1) but impose a different sanction.

## I. Background

Patrick Ridley and his mother, Madlyn Ridley-Fisher, were the sole beneficiaries of the Virginia P. Ridley Trust. Along with Harold Fisher — who is Ms. Ridley-Fisher's husband and was a creditor of the trust — they retained respondent to, among other things, remove Brenda Hopkins as trustee, secure the appointment of a new trustee, and compel the trustee to pay debts owed to Mr. Fisher and distribute trust assets to the beneficiaries. The Hearing Committee found that respondent did not explain potential conflicts of interest to the clients before they entered this agreement or "seek a waiver of conflicts" from them. Nonetheless, respondent acted on behalf of all three clients by filing a complaint in Superior Court that requested the relief described in the retainer agreement.

In November 2010, the court entered a consent order permitting Ms. Hopkins to resign, appointing Brian Hopson as the new trustee, and requiring Mr. Hopson to refrain from distributing trust assets without court approval until the parties resolved Ms. Hopkins' counterclaims for unpaid trustee fees and related debts. The court subsequently presided over a trial and found for Ms. Hopkins on all pending matters, although it awarded her less in damages than she initially sought.

After the trial court articulated these conclusions in an oral ruling, but before it reduced its decision to writing, Mr. Fisher emailed Mr. Hopson, with his wife's approval, and requested reimbursement for expenses he had incurred on behalf of the trust. Mr. Hopson obliged, paying Mr. Fisher $9,613.34, but later learned that Patrick Ridley objected to the disbursement. Respondent also objected. Respondent demanded that Mr. Fisher and Ms. Ridley-Fisher (the "Fishers") return the funds, asked Mr. Hopson to make the same request of them, and threatened to file a "praecipe" with the court seeking corrective action if the Fishers refused. The Fishers *did* refuse and informed respondent that they did not want him to file the praecipe. He filed it anyway.

The praecipe stated that the Fishers had obtained trust assets in violation of the consent order and that Trustee Hopson would not have disbursed those funds "but for the misrepresentations to him that the parties were all in agreement." Contrary to respondent's suggestion that the praecipe simply provided an "update [to] the court", the document also stated that "Plaintiff Patrick S. Ridley and Trustee Brian Hopson request that the court enter an Order of Judgment directing the return of these funds . . . ." Ultimately, the court "denied" appellant's filing, correctly noting that "a 'praecipe' is not an appropriate means for seeking court action." But before the trial court issued that order, the Fishers filed a pro se opposition.

In July 2014 Disciplinary Counsel filed a specification of charges alleging that respondent had violated District of Columbia Rules of Professional Conduct. After a hearing, the Committee determined that although Disciplinary Counsel failed to establish that respondent violated Rules 1.3(b)(1) (failure to seek client's objectives) and 8.4(d) (conduct that interferes with the administration of justice), he had proven by clear and convincing evidence that respondent violated Rule 1.3(b)(2), which prohibits intentionally prejudicing a client's interests, and Rules 1.7(b)(1), (2), and (3), all of which concern conflicts of interest. The Board

"concur[red]" with the Committee's findings concerning the rule violations as well as the sanction it recommended.

## II.  Discussion

### A.  Rule Violations

Respondent raises both substantive and procedural challenges to the Board's conclusion that he violated Rules 1.3(b)(2) and 1.7(b)(1), (2), and (3).  In assessing his arguments, we must defer to the Board's factual findings "unless they are unsupported by substantial evidence of record" but will conduct a de novo review of its findings of "ultimate facts" — that is, facts that have "a clear legal consequence" — as well as its conclusions of law.  *In re Bradley*, 70 A.3d 1189, 1193-94 (D.C. 2013) (per curiam) (internal quotation marks and citations omitted).

Procedurally, respondent argues that the Committee "suppressed" the testimony of two of his witnesses, Brian Hopson and Patrick Ridley.  The record tells a different story, however.  When scheduling problems arose, respondent decided not to call Ridley and agreed that Hopson's written statement provided an adequate substitute for his oral testimony.  Ridley also provided a written statement

and, contrary to respondent's allegations, the Committee not only reviewed both statements but also expressly cited each one in its report and recommendation.

The Board did not err in denying either respondent's "Motion to Dismiss and Vacate [the Committee's] Report and Recommendation" or his "Renewed [] Motion to Dismiss." Both motions complained that the Committee failed to issue its report within 120 days of the hearing, as required by D.C. Bar R. XI, § 9(a) and Board Rule 12.2, and argued that this failure, among other things, violated due process and made the Committee's findings less reliable. We have previously refused to dismiss charges under Bar R. XI, § 9(a) because the rule is "directory, rather than mandatory," *In re Morrell*, 684 A.2d 361, 370 (D.C. 1996), and respondent offers no reason to treat Board Rule 12.2 differently. Moreover, we disagree with respondent's bald assertion — without specific argument or support — that the Committee's report is less reliable, and therefore deserves less deference, due to the delay. *Cf. id.* ("It would hardly serve the integrity of the bar . . . to allow [respondent] to avoid the imposition of discipline for his serious ethical violations merely because the Hearing Committee took a long time carefully evaluating the substantial, complex evidence in his case.").

Turning to the merits, we focus first on the Board's determination that respondent violated Rule 1.7(b)(1), (2), and (3). In brief, those provisions forbid lawyers from representing multiple clients with conflicting interests unless the lawyer obtains their informed consent and "reasonably believes" that he or she can provide "competent and diligent representation." *See* D.C. R. Prof'l Cond. 1.7(b)(1), (2), (3) and (c).

The Board found that this case presented likely potential conflicts at the outset because one client (Mr. Fisher) was a creditor of the trust while the other two (Ms. Ridley-Fisher and her son Mr. Ridley) were beneficiaries, and all of them were seeking funds from the same limited trust assets. The Board concluded that respondent did not discuss with them how their interests might diverge and obtain their express waiver before undertaking to represent them jointly in litigation against the trustee. Respondent contends that the Board's findings are flawed because the clients: (1) were well aware of their respective positions from multiple pre-engagement meetings with counsel; (2) entered into a written retainer agreement that expressly retained respondent to remove and substitute the trustee, challenge the trustee's fee request, pay the debt owed to one client (Mr. Fisher), and distribute assets to the beneficiaries (Ms. Ridley-Fisher and her son Mr. Ridley); (3) waived any potential conflict by individually signing a verified

complaint against the trustee that set out the underlying facts that could arguably give rise to a potential conflict (he calls this "an expressed waiver"); and (4) impliedly continued to consent through a three-year course of conduct. He argues that each client's waiver was reasonable as they had a common objective and benefitted financially from respondent's joint representation as it allowed them to share the cost of attorney fees which were to be paid by them, not on a contingency basis or from trust funds (as the Board mistakenly thought).

We do not finally decide the question related to a waiver of potential conflicts at the outset of the representation because (1) we agree that respondent violated Rules 1.3(b)(2) and 1.7(b)(1) in light of his actions once actual conflicts developed in the course of the representation and (2) we have concluded that resolution of that question would not change our sanction. We therefore refrain from deciding whether respondent violated Rules 1.7(b)(2) and (3).

Respondent clearly violated Rule 1.7(b)(1) when an actual dispute arose among his clients. Once Mr. Ridley demanded that the Fishers return the payment from trust funds, and the Fishers asserted their right to keep it, respondent should have realized that his clients had *actually developed* adverse positions in the same matter. Even if he obtained informed consent, respondent could not continue

representing both Mr. Ridley and the Fishers, as respondent could not "reasonably" believe that he would be able to provide "competent and diligent representation" to each client under the circumstances.[1]  *See* D.C. R. Prof'l Cond. 1.7(c)(2).  Yet respondent did not move to withdraw from representing any of the clients.  Instead, he moved the court to adopt the outcome preferred by Mr. Ridley, advancing a position "adverse" to the one "taken by" the Fishers "in the same matter" and thereby violating Rule 1.7(b)(1).

We also agree with the Board that respondent violated Rule 1.3(b)(2) by filing the praecipe. That provision bars lawyers from "intentionally . . . [p]rejudic[ing] or damag[ing] a client during the course of the professional relationship."  Respondent was "demonstrably aware"[2] that his praecipe not only asked the court to compel Mr. Fisher to repay the funds Mr. Hopson distributed to him, but also accused the Fishers of making misrepresentations.  *See In re Dory*, 528 A.2d 1247, 1248 (D.C. 1987) (Belson, J., concurring) (discussing standard for proving intent under predecessor to Rule 1.3(b)(2)).  Although Mr. Fisher

---

[1] Though respondent suggests otherwise, Mr. Fisher remained a client even after the court dismissed him as a plaintiff in the trust litigation.  Nothing in the retainer agreement indicated that such an event would terminate the attorney-client relationship nor does respondent cite any evidence indicating that he or Mr. Fisher otherwise ended the representation after the dismissal occurred.

[2] *In re Robertson*, 612 A.2d 1236, 1251 (D.C. 1992) (appended Board decision) (internal quotation marks and citation omitted).

ultimately kept the disbursement, he and his wife had to prepare an opposition to their own lawyer's filing in order to protect their interests. Moreover, due to the praecipe, the Superior Court's public record now contains an allegation *from their attorney* that the Fishers acted deceitfully. These harms are sufficient to constitute "actual prejudice" under the rule.

Respondent argues that he believed the Fishers had violated the consent order by accepting the funds the trust owed Mr. Fisher while Ms. Hopkins' counterclaim remained pending. He further contends that he acted to protect his clients from contempt sanctions and to satisfy his obligations to the court and third parties. We accept the Committee's finding that respondent subjectively believed his clients acted wrongfully and assume, for the sake of this discussion, that this belief was reasonable. Nonetheless, filing the praecipe was not necessary to protect the Fishers from contempt charges. If anything, by alleging that his clients used misrepresentations to violate the consent order, respondent increased the risk that they would face sanctions.

Moreover, we reject respondent's argument that the consent order required him to protect Ms. Hopkins' interests in the trust assets. While the order prohibited the *new trustee* from distributing assets or paying claims, it imposed no

obligations on respondent to ensure his clients complied; indeed, he did not even sign it.[3] Thus, *In re Hopkins*, 677 A.2d 55 (D.C. 1996), is inapposite. In that case, we held that an attorney had a duty to protect a third party's interest in an estate because the lawyer gave assurances that she would do so and the third party materially relied on those assurances, to the benefit of the lawyer's client. *Id.* at 61-62. Here, respondent made no such commitment. Nor did respondent owe a duty to the former trustee under Rules 1.15(c) or (d), as those provisions apply only if the lawyer *possesses* property in which another has an interest and, here, respondent never possessed trust assets. Thus, we conclude that countervailing ethical duties did not justify respondent's decision to file the praecipe, and that he violated the District of Columbia Rules of Professional Conduct by doing so.

In sum, we agree with the Board: during his joint representation of Mr. Ridley and the Fishers, respondent violated Rules 1.3(b)(2) and 1.7(b)(1).

---

[3] In certain instances, a lawyer who reasonably believes his or her clients violated a consent order may need to disclose the misconduct or withdraw. *See* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 412 (1998) (discussing obligations imposed by the Model Rules of Professional Conduct when an attorney reasonably concludes that a client violated a consent order). Even if we assume those circumstances were present here, respondent went too far by moving the court to act against his clients and needlessly accusing them of making misrepresentations.

## B. Sanction

This court will adopt the Board's recommended sanction unless doing so would "foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *In re Long*, 902 A.2d 1168, 1171 (D.C. 2006) (per curiam) (internal quotation marks and citation omitted). Even under this deferential standard, we agree with respondent that the sanction proposed by the Board is too harsh. Respondent has no prior disciplinary history. His work in this case benefitted his clients on the whole by allowing them to replace an allegedly negligent trustee; he also reduced that trustee's recovery from the trust by tens of thousands of dollars compared to the amount she initially sought in her counterclaim. Respondent's violations marred these efforts but only caused his clients minimal prejudice and did not result in them suffering a financial loss. Nor did his conduct reflect bad faith. As the Committee found, respondent did not act based on self-interested motives, but rather misunderstood how the rules applied to a complex situation.

Resisting this conclusion, Disciplinary Counsel argues that respondent filed the praecipe to ensure he received his fees, an interpretation the Committee did not expressly endorse but one it opined the record "might" support. We deem this

view implausible. Had the court granted the relief requested in the praecipe, it would have compelled Mr. Fisher to repay the funds he received from the trust. Yet while Mr. Fisher was a party to the retainer agreement, the trust itself was not. Thus, the relief sought in the praecipe would have taken assets away from a client indebted to respondent and returned them to an entity with no such obligations. Such result would, if anything, have complicated respondent's ability to collect his fees, frustrating the purpose Disciplinary Counsel ascribes to respondent's conduct.[4]

The Committee relied on six cases to formulate its recommendation: *In re Fox*, 35 A.3d 441 (D.C. 2012); *In re Elgin*, 918 A.2d 362 (D.C. 2007); *In re Evans*, 902 A.2d 56 (D.C. 2006); *In re Long*, 902 A.2d 1168 (D.C. 2006); *In re Butterfield*, 851 A.2d 513 (D.C. 2004); and *In re Cohen*, 847 A.2d 1162 (D.C. 2004). If any unifying principle governs these decisions it is this: in contexts similar to the one at bar, deceitful and self-serving conduct results in harsher penalties. Compare, for example, *Long*, 902 A.2d at 1169, 1172 (thirty-day suspension stayed in favor of probation where attorney had "no self-serving

---

[4] We are not persuaded by Disciplinary Counsel's suggestion that respondent believed the Fishers would not pay his fees and sought to preserve trust assets for Mr. Ridley, whom he trusted to compensate him. The Committee did not make such a finding and Disciplinary Counsel only supports this theory with evidence that respondent was frustrated with his clients' failure to

intent"), with *Elgin*, 918 A.2d at 380, 384 (suspending attorney for six months with requirement of restitution where he acted dishonestly for the sake of "his own self-preservation, and that of his family"). Respondent did not act with improper motives, and this fact, combined with mitigating factors discussed previously, supports a more lenient sanction than the one proposed.

Rather than suspend respondent for three months, as the Board recommended, we suspend him for thirty days and stay the suspension in favor of one year of probation. As conditions of probation, respondent must complete six hours of continuing legal education on professional responsibility that Disciplinary Counsel approves and that includes a course on representing multiple clients in civil cases. Additionally, respondent must not during probation be the subject of a disciplinary complaint that results in a finding of misconduct in this or any other jurisdiction.

### III. Conclusion

We accept the Board's finding that respondent violated Rules 1.3(b)(2) and 1.7(b)(1) but impose the sanction stated above.

*So ordered*.